# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FONTAINE L. BAKER, SR.,<br><br>                Plaintiff,<br>v.<br><br>CHRIS BUESGEN, THOMAS ZEMAITIS, STEPHEN ANGLEMYER, HEATHER WILHELM-COPAS, JAMIE BARKER, JANE DOE 1-5, and JOHN DOE 1-5,<br><br>                Defendants. | Case No. 23-CV-1340-JPS<br><br>**ORDER** |

        Plaintiff Fontaine L. Baker, Sr., an inmate confined at Racine Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On April 1, 2024, the Court screened the complaint and allowed Plaintiff to proceed on an Eighth Amendment conditions and confinement claim, against Defendants Buesgen, Zemaitis, Anglemyer, Wilhelm-Copas, Barker, Jane Doe 1-5, and John Doe 1-5, for harmful fumes and a lack of heat and hot water. ECF No. 9 at 16. On June 5, 2024, the Court entered a scheduling order with a deadline for Plaintiff to identify the Doe defendants. ECF No. 15 at 2. On September 3, 2024, Plaintiff filed a motion to amend the complaint along with a proposed amended complaint. ECF No. 20.

        The Court will grant Plaintiff's motion to amend his complaint. Federal Rule of Civil Procedure 15 allows amendment once as a matter of course in certain circumstances; Rule 15 also provides that a Court should freely grant leave to amend when justice so requires. Civil Local Rule 15

requires that a motion to amend a complaint notify the court of the proposed changes and the proposed amended complaint be filed as an attachment to the motion. Civil Local Rule 15 further requires that a motion must reproduce the entire pleading as amended and may not incorporate any prior pleading by reference. Plaintiff indicates that he wishes to amend his complaint in order to identify the Doe defendants and clarify their individual acts. As such, the Court will grant Plaintiff's motion to amend the complaint and instruct the Clerk of Court to file the amended complaint, ECF No. 20-1, as the operative complaint going forward. The remainder of this Order screens the amended complaint.

1.   **FEDERAL SCREENING STANDARD**

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

Plaintiff brings the amended complaint against Defendants Warden Chris Buesgen ("Buesgen"), Thomas Zemaitis ("Zemaitis"), Stephen Anglemyer ("Anglemyer"), Heather Wilhelm-Copas ("Wilhelm-Copas"), Jamie Barker ("Barker"), Donna Johnson ("Johnson"), Sergeant Gronski ("Gronski"), Conner Hanno ("Hanno"), Hall ("Hall"), Sergeant Nelson ("Nelson"), J. Kratz ("Kratz"), Sergeant Eric Henricks ("Henricks"), J. Zastrow ("Zastrow"), Wnek ("Wnek"), R. Kalepp ("Kalepp"), B. Starch ("Starch"), Kathie Klinger-Berg ("Klinger-Berg"), Leahanna Krizan ("Krizan"), and Haylee Hoyt ("Hoyt"). ECF No. 20-1 at 1. During all relevant times, the individual defendants were all employees of Stanley Correctional Institution ("SCI"), and Plaintiff was housed at SCI on unit 2a. *Id.* at 1–2. On January 7, 2022, Plaintiff's cell was extremely cold and had no hot water. *Id.* at 2. Plaintiff notified Johnson, but it remained cold. *Id.* A

smell like burned rubber began to come through the vent in the cell but the room was never checked on by Johnson. *Id.*

On January 10, 2022, the heating system was still not functioning. Plaintiff and other inmates complained to Johnson and Gronski, but the temperature was never checked, and it remained cold. *Id.* On January 19, 2022, the exhaust went down, and the room became even colder. *Id.* Plaintiff again complained to Street,[1] Hanno, and Gronski, but nothing was done, and it remained cold. *Id.* Plaintiff continued to complain about the fumes and the cold to Street, Hanno, Henricks, Zastrow, Wnek, Kalepp, Johnson, and Starch on January 20, 22, 25, 27, and 29. During this time it was extremely cold outside, and the cell reflected it with temperatures as low as -16 degrees. *Id.* at 2-3.

On January 30, 2022, Plaintiff wrote to Warden Buesgen about the cold and fumes and how inmates were sick as a result. *Id.* at 3. Buesgen responded that temperatures were being monitored, and Plaintiff was directed to contact unit staff for future temperature issues. *Id.* Plaintiff wrote to the health service unit ("HSU") later that day about the extreme cold and fumes, but he was not seen by HSU. *Id.* Plaintiff filed an inmate complaint later that day. *Id.* On January 31, 2022, the HSU unit manager Barker responded to Plaintiff's request and told him to talk with his unit manager. *Id.* Plaintiff then complained to Johnson and Starch about the fumes and the extreme cold. *Id.* Johnson said she would make a work order to have the windows re-caulked and to have someone check the fumes coming out of the vent. No one ever came and Plaintiff was left feeling sick

---

[1]The Court notes that Street is not a named defendant. It is unclear if Plaintiff intended to bring a claim against this individual.

and in extremely cold conditions. *Id.* The inmate complaint examiner dismissed Plaintiff's complaint. *Id.*

On February 2, 2022, Plaintiff again wrote to HSU about this request for medical attention. *Id.* at 4. He wrote that he experienced dizziness from the fumes and pain in his eyes and throat from a burning sensation; HSU did not see him that day. Krizan received the request and did not respond to Plaintiff. *Id.* Plaintiff complained again on February 3, 2022, because the smell was so intense that all inmates came out of their cell and were unable to breath normally because of the fumes. *Id.* at 3–4. A white shirt named Ms. Parks and officers on unit 2A experienced the smell and ordered all inmates to sit in the dayroom. *Id.* Ms. Parks agreed that the smell was bad and that she would call maintenance. *Id.* Plaintiff wrote to HSU again for help; Klinger-Berg received the request and did not respond. *Id.* On February 4, 2023, the inmate complaint examiner, Wilber, sent Plaintiff's complaint back because he had filed more than one complaint a week. *Id.* Plaintiff maintains that he did not violate the rule because his complaints were exempt because they were a health and safety issue. *Id.* The same day, Plaintiff's cellmate, Mr. Adrien Durden, filed an inmate complaint about the cold and the fumes. *Id.* Plaintiff wrote to HSU again that day, repeating his pleas for help; Krizan received the request and failed to respond. *Id.* at 5.

On February 5, 2022, Plaintiff finally saw Krizan for his medical requests. *Id.* Plaintiff told the nurse about his chest and back pains from the fumes and the cold. *Id.* The nurse told him that even minimal fumes from an exhaust could be harmful, but she would not speak of it any further because it was not her problem. *Id.* The nurse went on to say, "Well a t-shirt could be made saying, 'I survived carbon monoxide at SCI, and see it as a

fundraiser," and laughed. *Id.* Plaintiff felt that he was not being taken seriously as a result. *Id.* The nurse indicated that Plaintiff's cartilage was swollen, and his back was in pain from being wrapped up in a blanket for so long and that he was "chilled to the bone." *Id.* Plaintiff was given Ibuprofen for his pain and sent away. *Id.* Plaintiff again notified the Warden about the cold and lack of hot water in his cell that day, but he received no response. *Id.* Plaintiff also contacted the Unit 2A Manager, Wilhelm-Copas, that day and received the following response: "'Mr. Baker I have monitored the water and room temperature over the past 3 days. Based on these numbers I trust your cell has warmed up and you now have hot water. If this is not the case please see me during my office hours and/or let the officers know so it can be addressed in a timely manner.'" *Id.* Plaintiff saw Wilhelm-Copas the following day and told her that his cell was still extremely cold; nothing was ever done and Plaintiff's cell was never checked. *Id.*

Plaintiff filed another inmate complaint on February 6, 2022, about not being seen by HSU. *Id.* On February 7, 2022, Plaintiff's complaint was affirmed. *Id.* Plaintiff complained again about the cold that day to Johnson and Gronski, but nothing was done. *Id.* at 6. Plaintiff was later seen by HSU that day for complaints of dizziness from exhaust fumes. *Id.* Plaintiff was told to go outside, take Tylenol and Ibuprofen and eye drops, and was sent away. *Id.* Realistically, Plaintiff could not leave his cell to escape the fumes because he needed permission to go outside. *Id.*

On February 13, 2022, Plaintiff wrote the Warden again that it had been extremely cold the last two days and that he did not have any hot water in his cell. *Id.* The Warden's office responded in writing, but nothing was done to fix the problem. *Id.* Plaintiff again wrote to HSU that day about

feeling sick and that his cell was ice cold; Hoyt received the request *Id.* Plaintiff also wrote to Wilhelm-Copas that day; she responded that maintenance was aware of the issue and working on it. *Id.* HSU responded on February 16, 2022, Hoyt wrote that they were aware of the issue but had no control over the heat. *Id.* at 7.

On March 25, 2022, Plaintiff spoke to the building and grounds superintendent, Zemaitis, about why he never came to check on the heat, fumes, or hot water issue. *Id.* Zemaitis responded that he had not checked the rooms himself but had instead relied on the computer. *Id.* Zemaitis said that he knew the boiler was "messed up" for years, that they were working on it, and that he was sorry Plaintiff was suffering. *Id.* In February 2022, the Warden came to their unit and Plaintiff and other inmates brought up their heating issue with him. *Id.* The Warden responded that they should make sure to sue the DAI because they were the ones responsible for providing funds to fix the issue. *Id.*

Plaintiff received information from the DOC website that the DOC had been aware of the heating and water issues since at least 2020 when it received the results of a study assessing the functions of the institution. *Id.* The reported states, "'The heating hot water distribution system deterioration is one of the facilities biggest concerns and needs to be replaced or converted…'" *Id.*

During the months of January and February in 2022, Plaintiff spoke to the social worker, Ms. Erickson, about the heating issue on numerous occasions. *Id.* at 8. Plaintiff observed her bundled up in a full coat and gloves and also saw a space heater in her office. On January 9, 2023, Plaintiff filed an open records request asking how many inmates filed complaints

Page 7 of 12
Case 2:23-cv-01340-JPS   Filed 10/11/24   Page 7 of 12   Document 22

regarding the heat in January through March 2022. *Id.* Plaintiff received a response indicating that the institution received forty-one complaints. *Id.*

**3. ANALYSIS**

The Court finds that Plaintiff may proceed on an Eighth Amendment conditions of confinement claim against Buesgen, Zemaitis, Anglemyer, Wilhelm-Copas, Barker, Johnson, Gronski, Hanno, Hall, Nelson, Kratz, Henricks, Zastrow, Wnek, Kalepp, Starch, Klinger-Berg, Krizan, and Hoyt. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013). Exposure to extreme cold

without alternative means to keep warm constitutes cruel and unusual punishment. *See Flores v. O'Donnell*, 36 F. App'x 204, 206–07 (7th Cir. 2002).

Here, Plaintiff alleges that he was subjected to extreme cold and harmful fumes for months that caused him serious health issues. Plaintiff alleges that he informed Defendants of the situation, and they took no action to correct the issue. Further development of the record will be needed to determine whether Plaintiff's allegations rise to the level of depriving him of life's necessities and whether Defendants' actions constituted deliberate indifference; however, at the pleadings stage, the Court finds the allegations sufficient to proceed on an Eighth Amendment conditions of confinement claim against Buesgen, Zemaitis, Anglemyer, Wilhelm-Copas, Barker, Johnson, Gronski, Hanno, Hall, Nelson, Kratz, Henricks, Zastrow, Wnek, Kalepp, Starch, Klinger-Berg, Krizan, and Hoyt.

### 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment conditions of confinement against Buesgen, Zemaitis, Anglemyer, Wilhelm-Copas, Barker, Johnson, Gronski, Hanno, Hall, Nelson, Kratz, Henricks, Zastrow, Wnek, Kalepp, Starch, Klinger-Berg, Krizan, and Hoyt for harmful fumes and a lack of heat and hot water.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges.

At this juncture, it is unclear whether any adjustment to the current scheduling order is needed because Plaintiff has simply identified the Does.

The Court notes, however, that it is amenable to either party filing a motion for an extension of time to modify the current deadlines, if needed.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to amend the complaint, ECF No. 20, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court docket the amended complaint, ECF No. 20-1, as the operative complaint;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Buesgen, Zemaitis, Anglemyer, Wilhelm-Copas, Barker, Johnson, Gronski, Hanno, Hall, Nelson, Kratz, Henricks, Zastrow, Wnek, Kalepp, Starch, Klinger-Berg, Krizan, and Hoyt;

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the amended complaint within thirty (30) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any

Page 10 of 12
Case 2:23-cv-01340-JPS    Filed 10/11/24    Page 10 of 12    Document 22

amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 11th day of October, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Page 11 of 12
Case 2:23-cv-01340-JPS    Filed 10/11/24    Page 11 of 12    Document 22

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.